

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# Meenan v. Harrison

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2657

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Meenan v. Harrison" (2008). *2008 Decisions.* Paper 1621.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1621

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2657
_____

TPR. SHAWN S. MEENAN;
BRENDALEE MEENAN,

Appellants

v.

CARL M. HARRISON, JR., DANIEL SIST,
ROBERT SEBASTIANELLI, JOHN RICE, THOMAS TRAISTER,
KATHLEEN SERAFIN and ROBERT J. FOOSE,

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 3:03-CV-01300
District Judge: Honorable A. Richard Caputo

Submitted under Third Circuit LAR 34.1(a)
Friday, May 24, 2007

Before: BARRY, CHAGARES, and TASHIMA,* *Circuit Judges*.

(Filed: February 12, 2008)

OPINION OF THE COURT
_____

---

* Honorable A. Wallace Tashima, United States Court of Appeals for the Ninth Circuit, sitting by designation.

TASHIMA, *Circuit Judge*.

Shawn Meenan, a trooper with the Pennsylvania State Police ("PSP"), and Brendalee Meenan, his wife, appeal the district court's grant of summary judgment in their 42 U.S.C. § 1983 action in favor of the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

The Meenans met with officials at Monsignor McHugh Elementary School, including its principal, defendant Kathleen Serafin, to discuss the alleged misconduct of their son's teacher. Unsatisfied with the school officials' response, Shawn Meenan initiated a criminal investigation of the teacher by reporting the alleged problems with his son's teacher to the PSP. PSP defendant Robert Sebastianelli conducted the investigation.

After some investigation, Sebastianelli informed Shawn Meenan that other parents were not cooperating with the investigation and that he found no evidence of illegal activity. Shortly after talking to Meenan, Sebastianelli received a phone call from one of the parents, complaining that Meenan was harassing her for her unwillingness to cooperate in the investigation. She told Sebastianelli that Meenan had telephoned her and shouted at her because she would not cooperate with the investigation. Sebastianelli notified his supervisor, defendant Daniel Sist, who then initiated an internal investigation

2

to determine if Meenan had improperly interfered with Sebastianelli's investigation in violation of PSP regulations. After Meenan learned that he was being investigated, he contacted a television reporter with his complaints about the teacher, the investigation, and the other parents. PSP Lieutenant Stacy Schmidt determined that Meenan was subject to discipline for his conduct, and defendant Carl Harrison assessed a penalty of a forty-day suspension without pay and an intratroop transfer.

The Meenans then commenced this action, alleging that Serafin, Sebastianelli, Sist, and PSP trooper John Rice conspired to shift the focus of the investigation away from the teacher and onto Shawn Meenan. They further alleged that the internal investigation and disciplinary action taken against Shawn Meenan constituted unconstitutional retaliation for his speaking out about the alleged teacher misconduct. They also alleged that the defendants violated the due process clause of the Fourteenth Amendment by interfering with their parental rights. In their amended complaint, the Meenans also alleged that PSP troopers Robert Foose and Thomas Traister harassed Shawn Meenan in retaliation for filing this lawsuit.

The district court granted summary judgment for all defendants on each of the Meenans' claims. It concluded that the Meenans had offered no evidence that the defendants interfered with their familial relationships. It determined that Brendalee Meenan could not raise claims of retaliation because she was never employed by the PSP and held that, although Shawn Meenan's speech was protected by the First Amendment,

3

he had failed to submit evidence showing that his speech was a motivating factor in the allegedly retaliatory conduct. Finally, the district court concluded that because the Meenans failed to provide evidence demonstrating a violation of their constitutional rights, the defendants were entitled to summary judgment on the conspiracy claims. The Meenans timely appealed, and we now affirm the district court.

## II.

We exercise plenary review over the district court's grant of summary judgment, construing the facts in the light most favorable to the nonmoving party. *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the nonmoving party has the burden of proof, the moving party may prevail by pointing out that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely upon bare assertions or conclusory allegations, but must adduce evidence establishing that there is a genuine factual dispute for trial. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). We may affirm the district court's grant of summary judgment on any ground supported by the record. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

## III.

Section 1983 "establishes a federal remedy against a person who, acting under

color of state law, deprives another of constitutional rights." *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007) (internal quotation marks and citation omitted). To establish a prima facie § 1983 case, a plaintiff must show that (1) the defendant deprived her of a federal right (2) while acting under color of state law. *Id.*

## A. The Due Process Claim

The Meenans argue that defendants' alleged failure to conduct a satisfactory investigation of the teacher and the PSP internal investigation of Shawn Meenan infringed upon their Fourteenth Amendment right to be free from governmental interference in their family relationships unless the government adheres to procedural and substantive due process requirements.[1] *See, e.g.*, *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

Even accepting their allegations as true, they fail to show that the defendants terminated, attempted to terminate, or otherwise interfered with their relationship with their son. The defendants did not, in any way, interfere with the Meenans' right to make decisions about their son's upbringing or education. *See Troxel v. Granville*, 530 U.S. 57, 72 (2000); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925). The Meenans, of course, remain free to take their son out of the private school he was attending or

---

[1] The Meenans cite a number of cases, most of which center upon state termination of the parent-child relationship or the removal of parent or child from the family home. *See, e.g.*, *Santosky v. Kramer*, 455 U.S. 745 (1982); *Quilloin v. Walcott*, 434 U.S. 246 (1978); *Stanley v. Illinois*, 405 U.S. 645 (1972); *Croft*, 103 F.3d 1123. These cases shed little light on the issues before us.

5

otherwise deal with their perceived problems with the child's private school. Simply put, the failure to investigate alleged illegal actions by a private teacher does not in any way amount to governmental interference with the parental relationship. *Cf. DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). The district court did not err in granting summary judgment for defendants on the Meenans' due process claims.

## B.    The First Amendment Retaliation Claims

### 1.    *Brendalee Meenan*

Brendalee Meenan contends that the district court erred when it granted summary judgment for the PSP defendants on her First Amendment retaliation claim. She argues that by retaliating against Shawn Meenan, the PSP defendants were taking action against her through her association with her husband. The district court properly granted summary judgment because she is not and never was a state employee, and therefore there can be no employment retaliation against her.

### 2.    *Shawn Meenan*

#### a.    Retaliation for speaking to the media

Shawn Meenan argues that the PSP defendants retaliated against him for speaking

6

out about the investigation of his son's teacher. First, he contends that Harrison retaliated against him by transferring and suspending him for forty days without pay. Meenan argues that Sist retaliated against him by initiating an internal investigation into Meenan's conduct. Finally, Meenan contends that Sebastianelli retaliated against him by shifting the focus of the investigation away from the teacher and onto Meenan.

To prevail on a First Amendment retaliation claim, Meenan must prove two elements: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).[2] "These determinations are questions of law for the court." *Baldassare*, 250 F.3d at 195. A public employee's statements are protected activity under the First Amendment if (1) when making the statement, the employee spoke as a citizen, (2) the speech involved a matter of public concern, and (3) "the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d at 241-42 (quoting *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006)).

"A public employee does not speak 'as a citizen' when he makes a statement 'pursuant to [his] official duties,'" *id.* at 242 (quoting *Garcetti*, 126 S. Ct. at 1960), and as

---

[2] If these criteria are met, the defendants may then rebut the claim by establishing that they would have taken the same action in the absence of the protected conduct. *Hill*, 455 F.3d at 241 n. 23; *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). We do not reach that stage in this case.

such, "the Constitution does not insulate their communications from employer discipline," *Foraker v. Chaffinch*, 501 F.3d 231, 239 (3d Cir. 2007) (quoting *Garcetti*, 126 S. Ct. at 1960). Here, Meenan's statements to the media were not made pursuant to his official duties. Rather, he spoke in his capacity as a private citizen and a parent, and his media report bore no official significance. *Garcetti*, 126 S. Ct. at 1960; *Pickering v. Bd of Educ.*, 391 U.S. 563, 574 (1968). Contacting a television reporter with concerns about the sufficiency of another officer's investigation was not one of the tasks Meenan was expected to perform. *See Garcetti*, 126 S. Ct. at 1960; *Foraker*, 501 F.3d at 241. Indeed, the PSP has a policy requiring that officers not interfere with ongoing investigations or release information to the public without complying with certain regulations. Therefore, Meenan's conduct was not within the bounds of his official duties. Given that the first criterion is satisfied, we turn to the second.

A public employee's speech involves a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). We examine the "content, form, and context of a given statement, as revealed by the whole record" to determine whether an employee's speech addresses a matter of public concern. *Connick*, 461 U.S. at 147-48. Although Meenan's motive for contacting the media was a personal grievance, this does not necessarily mean that the topic of his speech was not a matter of public concern, *see*

8

*Watters v. City of Philadelphia*, 55 F.3d 886, 894 (3d Cir. 1995), although his motive is a relevant factor, *see Versarge v. Township of Clinton*, 984 F.2d 1359, 1365 (3d Cir. 1993) (reasoning that the plaintiff was motivated by a "personal grudge" weighed against finding that he spoke on a matter of public concern); *Zamboni v. Stamler*, 847 F.2d 73, 77–78 (3d Cir. 1988) (describing the speaker's motivation as "merely one factor" to be considered in assessing the character of the employee's speech).

Meenan's stated purpose for contacting the media was that the Meenans wanted the community to know about the actions of the teacher, they were concerned that the school would successfully cover up the teacher's actions, and they were hopeful that a news report would prompt former students to come forward. The record, however, makes clear that he was particularly motivated because the teacher in question was his child's. Nevertheless, the public does have an interest in learning of improper conduct by teachers and seeing that police officers discharge their responsibilities thoroughly to investigate complaints of criminal conduct. *See Connick*, 461 U.S. at 148. We therefore conclude that Meenan's speech was on a matter of public concern.

Next, we examine whether the PSP had an adequate justification for treating Meenan differently from any other member of the general public. *See Garcetti*, 126 S. Ct. at 1958. The PSP would have had an adequate justification if its interests in an efficient and effective workplace outweigh Meenan's interest, as a citizen, in commenting upon matters of public concern. *See Pickering*, 391 U.S. at 568. The state has the burden of

9

demonstrating that its interests should prevail. *Baldassare*, 250 F.3d at 198. The public's interest in potential impropriety and breaches of trust by public employees – especially police, given their role in ensuring public safety – is strong. *See id.* In examining the state's interests, we look at whether the statement impairs discipline, harmony among coworkers, has a detrimental impact on close working relationships, or interferes with the regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). The defendants need not show that Meenan's speech actually caused disruption, but only that it was likely to be disruptive. *Watters*, 55 F.3d at 896.

Meenan violated a PSP regulation, which provides that "[m]embers shall not interfere with an investigation assigned to another agency for investigation without the consent of that agency, except by the order of their Troop Commander, Bureau/Office Director, or their designee." Meenan did not obtain his Troop Commander's permission before contacting the media. Meenan's violation of a known PSP policy weighs against him. *See Connick*, 461 U.S. at 153 n.14. Meenan's disregard of PSP regulations and the established chain of command undermined his supervisor's authority and discipline within the PSP. Although "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights," *Watters*, 55 F.3d at 899, courts have given law enforcement agencies wide latitude to regulate an employee's speech when that speech impacts areas such as discipline, morale, and uniformity within the force, *see City of San Diego v. Roe*, 543 U.S. 77, 84 (2004) (holding that a police officer's off-duty

10

distribution of videos of him engaging in pornographic activity was not a matter of public concern in part because "[t]he speech in question was detrimental to the mission and functions of the employer"); *Kelley v. Johnson*, 425 U.S. 238, 245 (1976) (recognizing that police departments should be granted deference to make choices related to "discipline, espirit de corps, and uniformity"); *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000) ("In a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers."); *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir. 1998) (noting that the government's interest is "particularly acute in the context of law enforcement, where there is a heightened interest . . . in maintaining discipline and harmony among employees") (citation and internal quotation marks omitted)); *cf. Connick*, 461 U.S. at 151-52 ("When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate.").

Furthermore, Meenan's actions may well have undermined Sebastianelli's investigation. Meenan identified himself as a state trooper to the reporter and gave names and telephone numbers of the parents, which quite likely made the parents less inclined to cooperate with the investigation. Meenan's violation of PSP regulations and his failure to follow the chain of command might have been justified if he suspected his commanding officer of wrongdoing, *see Connick*, 461 U.S. at 148, but he went to the media, not to

11

report internal corruption or criticize PSP policies, but to air his personal dissatisfaction with Sebastianelli's investigation. Given that Meenan was motivated by a personal dispute and that he violated a PSP regulation, we conclude that Meenan's limited interest in the speech does not outweigh the state's interest in maintaining order, trust, and discipline within the PSP. *See Connick*, 461 U.S. at 152 (holding that the state may need to make a stronger showing "if the employee's speech more substantially involved matters of public concern"). We conclude that the district court did not err in granting summary judgment to defendants Harrison, Sist, Rice, and Sebastianelli.

**b.** Retaliation for filing federal lawsuit

Shawn Meenan also contends that defendants Traister and Foose retaliated against him for filing this federal lawsuit. As the district court correctly determined, the filing of a lawsuit is a constitutionally protected activity.[3] *See Foraker*, 501 F.3d at 236. Therefore, we must determine whether that act by Meenan was a substantial or motivating factor in the alleged retaliatory conduct.

A public employer engages in unconstitutional retaliation "when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003). Actions that are "*de minimis* or trivial," however, do not violate an employee's First Amendment rights. *Id.* The court must determine whether the alleged acts of

---

[3] The defendants concede that this activity is protected by the First Amendment.

12

harassment were "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000).

The parties do not dispute that Foose pulled a callbox when no emergency existed. Foose argues that he pulled the callbox to test Meenan's response time. Viewing the facts in the light most favorable to Meenan, Foose's action, while inappropriate, was *de minimis* and not part of a continuing course of conduct. Therefore, it did not violate Meenan's First Amendment rights. *See Brennan*, 350 F.3d at 419; *see also McKee v. Hart*, 436 F.3d 165, 171 (3d Cir. 2006) (holding that supervisor's critical statements and reprimands did not rise to the level of a constitutional violation). Additionally, Meenan failed to provide any evidence showing that Foose was motivated by Meenan's protected activity; instead, he simply asserts that a jury could conclude that the lawsuit was a motivating factor in Foose's actions. We reject this conclusory allegation and conclude that summary judgment was properly granted in favor of defendant Foose.

Similarly, Meenan has failed to offer evidence demonstrating that Traister took retaliatory action against him. Meenan argues that Traister aided and acquiesced in Foose's actions. Futher, Meenan has not submitted evidence demonstrating that Traister's conduct was motivated by Meenan's protected activity. We conclude that Meenan has failed to show that Traister's actions rise to the level of a constitutional violation, *see Brennan*, 350 F.3d at 419; *McKee*, 436 F.3d at 171; therefore, the district court properly granted summary judgment for defendant Traister, as well.

13

## C. The Conspiracy Claim

Finally, the Meenans contend that the district court erred when it granted summary judgment in favor of the defendants on their conspiracy claim. They contend that Rice, Sebastianelli, Sist, and Serafin conspired to shift the focus of the investigation toward Shawn Meenan. "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (internal citation omitted). We conclude that because the Meenans failed to offer evidence showing a constitutional violation, the district court did not err in granting summary judgment for defendants on the conspiracy claim.

## IV.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

14